IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT MICHAEL ARNALL,

    *Plaintiff,*

vs.

    Case No. 20-02107-EFM-TJJ

CITY OF PITTSBURG, KANSAS,

    *Defendant.*

**MEMORANDUM AND ORDER**

Before the Court is Defendant City of Pittsburg's ("City" or "PPD") motion for summary judgment (Doc. 24) under Fed. R. Civ. P. 56. The City seeks summary judgment on Plaintiff Robert Arnall's various claims of employment discrimination. Mr. Arnall alleges the City, through its Police Department, discharged him because of his race and his sex, in violation of Title VII of the Civil Rights Act of 1964, as well as because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"). Further, Mr. Arnall alleges his discharge was in retaliation for his engaging in protected activity in violation of Title VII. Because Mr. Arnall (1) fails to establish a prima facie of employment discrimination for his claims of discriminatory discharge because of his race, sex, or age, and (2) fails to establish the City's proffered legitimate non-retaliatory reason

is pretextual on his retaliatory discharge claim, the Court grants City's motion for summary judgment.

## I. Factual and Procedural Background

Plaintiff Robert Arnall is a 51-year-old male of Native American descent. He formerly served as a lieutenant with the City of Pittsburg Police Department. Sometime in 2013, rumors began to swirl that Mr. Arnall was engaged in an affair with Amanda Alt, a PPD dispatcher. Major Melanie Schaper, Mr. Arnall's supervisor, approached Mr. Arnall seeking to address the rumors. Mr. Arnall denied the affair at that time.

In March 2014, Major Schaper heard further rumors of the affair between Mr. Arnall and Ms. Alt. This time, Major Schaper was concerned by reports that Mr. Arnall was advising shift officers not to make stops during Ms. Alt's shift, so she would not be busy. Major Schaper approached Mr. Arnall with these rumors, which Mr. Arnall once again denied. Major Schaper documented the content of this conversation in an internal memorandum dated April 14, 2014.

On April 18, 2019, Mr. Arnall approached Major Schaper about Ms. Alt. Arnall informed Major Schaper that Ms. Alt was harassing him and his family. Major Schaper referred the matter to PPD's internal investigations department. Lieutenant Ben Henderson was assigned to the investigation. Lieutenant Henderson first interviewed Mr. Arnall. In that interview, Mr. Arnall stated that the Ms. Alt's harassment dated back to 2016. Mr. Arnall admitted that he and Ms. Alt had been friends, but once again denied any romantic relationship with Ms. Alt.

Lieutenant Henderson then interviewed Ms. Alt. In her interview, Ms. Alt admitted to some of the alleged harassing behavior. She also indicated that she and Mr. Arnall had been in a sexual and romantic relationship at times between 2008 and 2018. Ms. Alt also said that Mr. Arnall had spoken to her about his 2014 conversation with Major Schaper, and that he feared Major

Schaper would discover that he lied about the affair. After this revelation, Lieutenant Henderson once again spoke to Mr. Arnall. Mr. Arnall admitted to having an affair with Ms. Alt after being questioned by Lieutenant Henderson.

After completing its investigation, PPD fired Mr. Arnall. Its stated reasons for doing so were several violations of PPD policy. PPD stated that Mr. Arnall "g[ave] false or misleading statements to a supervisor or person in position of authority in connection with any investigation" and was involved with "dishonest or disgraceful conduct, whether on or off duty that adversely affect[ed] [his] relationship with the department."[1] PPD forwarded this information to the Kansas Commission on Peace Officers' Standards and Training ("CPOST").

After Mr. Arnall's termination, CPOST initiated an investigation to determine whether Mr. Arnall violated the Kansas Law Enforcement Training Act ("KLETA"). An initial investigation by the CPOST investigations committee determined that Mr. Arnall violated the KLETA, in part by lying about his relationship with Alt during an official investigation. Mr. Arnall requested a hearing on the matter, and the full CPOST confirmed the committee's findings. CPOST revoked Mr. Arnall's certification as a law enforcement officer.[2]

Mr. Arnall now alleges he was discharged because of his race (Native American), his sex (male), and his age (51). In support of this allegation, Mr. Arnall lambasts the "buddy system" he believes exists within the PPD. He believes that certain people are "protected" from the adverse consequences of their actions, while others are not. More specifically, Mr. Arnall avers that other

---

[1] Arnall Termination From dated May 14, 2019, Doc. 24-3.

[2] Through Mr. Arnall repeatedly decries the unfairness of this decision in his briefing, the Court notes this federal employment discrimination suit is not the proper avenue to seek review of that decision. Judicial review under K.S.A. 77-601 *et seq.* would have been the appropriate avenue.

PPD employees found to have lied in the course of their duties were treated differently that him. Mr. Arnall states that Officer Tony Colyer lied to his supervisor twice, which resulted in a write-up of the first occasion and a demotion on the second occasion. Additionally, Mr. Arnall states that Officer Donald Bailey "lied in a report and under oath on a case" two times.[3] Officer Bailey was required to undergo retraining for the first offense and fired for the second. Mr. Arnall further avers that neither officer lost his law enforcement certification. Mr. Arnall does not specify the content of either lie, nor the age or race of either comparator. Nor does Arnall offer any detail as to how the "buddy system" within the PPD protects individual based on their race, sex, or age.

Mr. Arnall also alleges his discharge was in retaliation for several actions he took while employed by PPD. He states that filed a report against PPD human resources generalist Brian Listwan because he believed Mr. Listwan lied on his application for city employment. Further, Arnall suggests his termination may be in connection to his unspecified advocacy for the "fair treatment of employees" at a meeting prior to his termination.[4]

Mr. Arnall brings suit in this Court after having properly exhausted his administrative remedies.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[5] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered

---

[3] Pl.'s Aff., Doc. 29-1, at 4.

[4] *Id.* at 2.

[5] Fed. R. Civ. P. 56(a).

evidence permits a reasonable jury to decide the issue in either party's favor.[6] The movant bears the initial burden of proof, though "a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[7] Such a movant "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[8] The nonmovant must then bring forth "specific facts showing a genuine issue for trial."[9] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[10] The court views all evidence and draws "reasonable inferences therefrom in the light most favorable to the non-moving party."[11]

### III.   Analysis

As noted above, Mr. Arnall brings four claims under federal anti-discrimination law. He alleges that (1) he was unlawfully discharged because of his race, in violation of Title VII; (2) he was unlawfully discharged because of his sex, in violation of Title VII; (3) he was unlawfully discharged because of his age, in violation of the ADEA; and (4) he was retaliated against for engaging in protected activity, in violation of Title VII.

---

[6] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (quoting *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[8] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp*, 477 U.S. at 325).

[9] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

[10] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[11] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (quoting *N. Tex. Prod. Credit Ass'n v. McCurtain Cty Nat'l Bank*, 222 F.3d 800, 806 (10th Cir. 2000)).

As a foundational matter, because Mr. Arnall relies on circumstantial evidence to prove unlawful discrimination, each of these claims is subject to analysis under the framework established in *McDonnell Douglas Corp. v. Green*,[12] and its progeny.[13] Under this framework, the plaintiff must initially establish a prima facie case of discrimination for each of his claims.[14] If the plaintiff establishes a prima facie case, the "burden of production shifts to the employer 'to articulate some legitimate, nondiscriminatory reason' for its action."[15] If defendant meets this burden, plaintiff must establish that the proffered reason is mere pretext for unlawful discrimination.[16]

As noted, Mr. Arnall must first establish a prima facie case for each of his four claims before the Court will consider PPD's proffered reason for the discharge. The Court examines each of Mr. Arnall's four claims in turn.

**A.     Race Discrimination**

Mr. Arnall fails to establish a prima facie case of race discrimination under Title VII. Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's race."[17] To establish a prima facie case of discriminatory discharge under the *McDonnel Douglas* framework, Mr. Arnall must show (1) he is a member of a protected class, (2)

---

[12] 411 U.S. 792 (1973).

[13] *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002) (Applying the *McDonnell Douglas* framework to Title VII race discrimination); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006) (Title VII sex discrimination); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (ADEA discrimination); *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015) (Title VII retaliation).

[14] *McDonnell Douglas*, 411 U.S. at 802.

[15] *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (quoting *McDonnell Douglas*, 411 U.S. at 802).

[16] *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1259 (10th Cir. 2001).

[17] 42 U.S.C. § 2000e-2(a)(1).

he suffered an adverse employment action, and (3) circumstances surrounding the adverse employment action raise an inference of discrimination.[18]  Plaintiff's burden at the prima facie stage is "not onerous."[19]  Still, a plaintiff may fail at the prima facie stage if he does not demonstrate how the conduct of his employer raises an "inference of unlawful discrimination."[20]  "As the very name 'prima facie case' suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a legally mandatory, rebuttable presumption."[21]

Mr. Arnall fails to establish any such connection in this case.  The City does not dispute that Arnall is Native American, and therefore belongs to a protected class, or that he was discharged.  As such, the Court focuses its attention on the "critical" inquiry of whether the facts give rise to an inference of unlawful discrimination.[22]

Mr. Arnall attempts to raise an inference of discrimination by showing his treatment was different from that of other PPD employees who were caught in a lie.  According to Mr. Arnall, Officers Tony Colyer and Donald Bailey both lied in the course of their duties and neither received severe punishment until the second such offense; Officer Colyer was demoted and Officer Bailey was fired.  But Mr. Arnall leaves out crucial details from which this Court could infer that the differing treatment was based, at least in part, on Mr. Arnall's race.  He fails to specify how either officer's lie was comparably severe to his lies during an official investigation.  He fails to specify

---

[18] *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011).

[19] *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)

[20] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[21] *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311–12 (1996) (citation and quotations omitted).

[22] *Adamson v. Multi. Cmty Diversified Servs.*, 514 F.3d 1136, 1151 (quoting *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005)).

the race of either officer. In fact, he fails to show how his treatment meaningfully differed from that received by the other officers. By this Court's count, Mr. Arnall lied at least twice regarding his relationship with Ms. Alt: once to Major Schaper in 2014, and once in his first interview with Lieutenant Henderson. This means that Mr. Arnall, like Officers Bailey and Colyer, lied twice and received a severe punishment after the second lie. Though neither other officer had their law enforcement certification revoked, this inaction on the part of CPOST is not attributable to PPD.

Mr. Arnall's problem with PPD does not seem to be about his race. He barely mentions race in his brief and affidavit, and instead focuses much attention on the unfairness of the "buddy system" within the PPD. He complains that certain people are "protected" while others, presumably himself, are not. The Court empathizes with Mr. Arnall if he was indeed left out of some "in-crowd" but it is not the province of this Court to pass judgment on employer decisions that do not violate federal law.[23] Mr. Arnall has offered no evidence that the "buddy system," if it exists, violates federal law by discriminating based on race or other protected categories. Therefore, viewing the evidence in the light most favorable to Mr. Arnall, he fails to create any inference that his discharge was based on unlawful racial discrimination. No reasonable jury, based on the evidence presented, could find for him on that issue. Because there is no genuine dispute of material fact on this issue, the City is entitled to summary judgment on Mr. Arnall's claim of race discrimination.

**B.    Sex Discrimination**

Mr. Arnall fails to establish a prima facie case of sex discrimination under Title VII. Title VII makes it unlawful for an employer "to discharge any individual . . . because of such

---

[23] *Kendrick*, 220 F.3d at 1233 ("Our role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." (citation omitted)).

individual's . . . sex."[24] Ordinarily, a prima facie case of discriminatory discharge requires that plaintiff show (1) he is a member of a protected class, (2) he was qualified for his job, (3) he was subject to an adverse employment action, and (4) he was treated less favorably than others.[25] However, in a reverse sex discrimination case—a case in which the plaintiff is a male, a group not historically subject to discrimination in the workplace—the Tenth Circuit has held the plaintiff "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority."[26]  "Alternatively, 'a plaintiff may produce facts sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred.' "[27]

Mr. Arnall fails to point to a genuine dispute of material fact as to either of the above alternatives.  He does not suggest that PPD is one of those unusual employers that discriminates against men, and he fails to point to any facts that raise an inference his sex had anything to do with his discharge.  The only time Mr. Arnall mentions sex in his affidavit is when he states that Major Schaper, his supervisor, is female.  However, he does no more to tie the challenged discharge to his sex.  All officers Mr. Arnall claims were treated differently than him were male, making this evidence meaningless as to his sex discrimination claim.  Without any evidence creating an inference of sex discrimination, there is no genuine dispute of material fact as to this claim and the City is entitled to summary judgment.

---

[24] 42 U.S.C. § 2000e-2(a)(1).

[25] *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004) (citations omitted.

[26] *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992).

[27] *Argo*, 452 F.3d at 1201 (quoting *Notari*, 971 F.2d at 590).

C.      **Age Discrimination**

Mr. Arnall fails to establish a prima facie case of age discrimination under the ADEA. Under the ADEA, it is "unlawful for an employer . . . to discharge any individual . . . because of such individual's age."[28] To establish a prima facie case under the ADEA, a plaintiff must show (1) he was 40 or older at the time of his termination; (2) he was performing satisfactory work; (3) he was discharged; and (4) his replacement was a younger person, though not necessarily one younger than 40 years old.[29] The purpose of the prima facie case is to establish "an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor."[30] Without facts to establish this inference, the plaintiff will not receive a presumption of discrimination and the defendant will not be required to defend against the charge.[31] The first three elements being undisputed, the Court focuses on the fourth element.

Mr. Arnall fails to offer any evidence as to the fourth element of his prima facie case. He does not claim that, after his discharge, his position was filled by a younger person. Further, Mr. Arnall does not point to any facts that would lead this Court to draw an inference that his discharge was the product of unlawful age discrimination. He does not mention his age once in his brief in opposition to summary judgment, nor does he suggest how his discharge is evidence of age discrimination. Because Mr. Arnall fails to present any evidence to support his prima facie case of age discrimination, no reasonable jury could find for him on that claim. The Court therefore

---

[28] 29 U.S.C. § 623(a)(1).

[29] *Adamson*, 514 F.3d at 1146 (citation omitted).

[30] *Id.* (citation omitted).

[31] *Id.* (citation omitted).

concludes there is no genuine dispute of material fact as to that claim, and the City is entitled to summary judgment.

**D.     Retaliation**

   *1.     Prima Facie Case*

Mr. Arnall's affidavit, uncontroverted by the City with respect to the retaliation claim, establishes a prima facie case of retaliatory discharge under Title VII.  Title VII provides that an employer may not discharge an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[32]  Practically, a plaintiff must establish three prima facie elements to proceed with a retaliatory discharge claim: "(1) [he] engaged in a protected activity, (2) [he] suffered a material adverse action, and (3) there was a causal connection between the protected activity and the adverse action."[33]  Plaintiff's burden at the prima facie stage is "not onerous."[34]  Mr. Arnall clearly suffered a material adverse action in being discharged.  As such, the Court focuses on the other two elements.

An employee engages in protected activity by either "oppos[ing] any practice" made unlawful by Title VII, or by "participat[ing] . . . in an investigation, proceeding, or hearing" under Title VII.[35]  Mr. Arnall proffers two activities he believes are protected by Title VII.  First, Mr. Arnall "pushed up a complaint" on Brian Listwan, PPD human resources generalist, for "lying on

---

[32] 42 U.S.C. § 2000e-3(a).

[33] *Thomas*, 803 F.3d at 514.

[34] *Orr*, 417 F.3d at 1149.

[35] 42 U.S.C. § 2000e-3(a).

his city application."[36]  This does not constitute protected activity because Mr. Arnall's complaint is not aimed at a practice made unlawful by Title VII.[37]  Second, Mr. Arnall states that he "stood up against the way [PPD] classified employees."  Mr. Arnall alleges that he was at a meeting where PPD determined employee discipline based on the employee's "category."  Mr. Arnall suggests some of these categories were the employee's race and age.  If true, such a disciplinary scheme would likely violate Title VII.[38]  PPD fails to discuss these allegations and does not argue that Mr. Arnall did not engage in protected activity.  Therefore, viewing these limited facts in the light most favorable to Mr. Arnall, the Court presumes he engaged in protected activity.

There must also be a causal connection between Mr. Arnall's protected activity and his discharge.  A causal connection may be shown by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."  However, unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation.[39]

Mr. Arnall states that the meeting in which he "stood up against" PPD's alleged classification of employees took place "just prior to [his] termination."  Though Mr. Arnall fails to include a date for this meeting, PPD does not argue that Mr. Arnall has not established sufficient temporal proximity to establish causation at the prima facie stage.  Therefore, the Court will now look to whether PPD states a legitimate, non-retaliatory reason for the discharge.

---

[36] Pl.'s Aff., Doc. 29-1, at 2.

[37] *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ("Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful [by Title VII].").

[38] *See, e.g.*, *Lewis v. Four B Corp.*, 347 F. Supp. 2d 1017 (D. Kan. 2004), *aff'd*, 211 F. App'x 663 (10th Cir. 2005).

[39] *See Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997).

*2.     Legitimate Non-Retaliatory Reason and Pretext*

The burden shifts to the City to produce a legitimate non-retaliatory reason for its discharge of Mr. Arnall. The City has met this burden by producing evidence that it fired Mr. Arnall for lying in an official investigation, rather than in retaliation for his opposition to alleged disciplinary practices at a PPD meeting. PPD internal affairs began an investigation after Mr. Arnall sought relief from Ms. Alt's harassment. PPD interviewed both Mr. Arnall and Ms. Alt, and provided clear documentation that Mr. Arnall lied in his initial interview with Lieutenant Henderson when he stated that he did not have a romantic relationship with Ms. Alt. When confronted with Ms. Alt's statements the following day, Mr. Arnall admitted that he and Ms. Alt had a romantic, sexual relationship. This is sufficient for the City to meet its burden at this stage.

To survive summary judgment then, Mr. Arnall must establish that this proffered reason is pretextual. "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.' "[40] Though Mr. Arnall spills much ink on the subject, he is unable to genuinely dispute the facts outlined in the preceding paragraph. In the course of Mr. Arnall's two interviews with Lieutenant Henderson during the PPD internal investigation, Mr. Arnall changed his story about his relationship with Ms. Alt. He denied a romantic relationship during the first interview and admitted to a romantic, sexual relationship in the second interview. Mr. Arnall had previously lied to Major Schaper when she asked him about the rumors of his affair in 2014. PPD fired him for these lies. Mr. Arnall offers

---

[40] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951–52 (3d Cir. 1996)).

no evidence from which the Court could conclude that PPD did not act for this stated reason but rather acted in retaliation for his alleged actions at the PPD meeting. The Court concludes that PPD's proffered reason for Mr. Arnall's discharge is worthy of credence, and therefore not pretextual. As such, PPD is entitled to summary judgment on Mr. Arnall's retaliatory discharge claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED.**

**IT IS SO ORDERED.**

This case is now closed.

Dated this 21st day of September, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE